UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACHELE LONG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARILLA AMERICA INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Trachele Long ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Barilla America Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and/or sells multiple types of tomato sauces (the "Products")[1] throughout the United States, including in New York. Defendant markets its Products in a systematically misleading manner by misrepresenting that the Products do not contain preservatives.

2. Defendant clearly lists "No Preservatives" on Products' label, capitalizing on the preference of health-conscious consumers to purchase foods that are free from preservatives. However, Defendant's Products contain "citric acid"—a well-known preservative used in food products.

---

[1] The Products encompass all of Defendant's canned and packaged products that are advertised as containing "No Preservatives" but contain citric acid. The Products include but are not limited to Barilla Marinara Premium Sauce, Barilla Parmesan & Pecorino Premium Sauce, Barilla Roasted Garlic Premium Sauce, Barilla Savory Herb Premium Sauce, Barilla Tomato & Basil Premium Sauce, Barilla Fire Roasted Marinara Premium Sauce, Barilla Traditional Sauce, and Barilla Chunky Traditional Sauce.

2

3.      As a result of its deceptive conduct, Defendant violates state consumer protection statutes and has been unjustly enriched at the expense of consumers.

4.      Plaintiff purchased Defendant's Products and, on behalf of herself and similarly situated purchasers, asserts claims for violations of New York General Business Law §§ 349 and 350, for unjust enrichment, and for breach of express warranty.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6.      This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8.      Plaintiff Trachele Long is a citizen of New York who resides in Mount Vernon, New York. Ms. Long has purchased the Products for her personal use at various times during the applicable statute of limitations. Most recently, in or around June 2023, Ms. Long purchased Barilla Roasted Garlic Premium Sauce from a Food Bazaar in Mount Vernon, New York for approximately $3. In purchasing the Product, Ms. Long relied on Defendant's false, misleading, and deceptive marketing of the Product as containing "No Preservatives." Ms. Long understood that "No Preservatives" meant that the Product did not contain any preservatives, but in fact the Product she purchased did contain citric acid, a preservative. Had Ms. Long known that the "No

3

Preservatives" representation was false and misleading, she would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

9. Defendant Barilla America Inc. is corporation organized under the laws of Illinois with its principal place of business located at 191 North Wacker Drive, Chicago, IL 60606.

## GENERAL ALLEGATIONS

**Defendant Misrepresents the Products**

10. Defendant advertises and displays on the side of each of the Products that it contains "No Preservatives," thereby misleading reasonable consumers into believing that the Products are free from preservatives. However, the Products contain citric acid, a well-known and well-documented preservative. Defendant's relevant labeling of the Products, along with their ingredient list, are depicted below:





**Ingredients:**
Diced tomatoes in tomato juice, tomato puree (water, tomato paste), onions, garlic, sea salt, basil, extra virgin olive oil, oregano, citric acid (acidity regulator), natural flavor.



**Ingredients:**
Tomato puree (water, tomato paste), diced tomatoes in tomato juice, roasted garlic, garlic, sea salt, dried onion, extra virgin olive oil, parsley, oregano, citric acid (acidity regulator).





11.     Additionally, Defendant falsely implies that the citric acid solely functions as an "acidity regulator" despite functioning as a preservative.

12.     **Citric Acid is a Preservative.**  The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to

6

food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

13. Food preservatives are classified into two main groups: antioxidants and antimicrobials. Food scientists agree that the chemical properties of citric acid make it a preservative. Specifically, citric acid is classified as an antioxidant that delays or prevents the deterioration of foods by so-called oxidative mechanisms.[2]

14. In its "Overview of Food Ingredients, Additives & Colors," the FDA lists "citric acid" as a preservative.[3] The FDA also recognizes that preservatives, like citric acid, are commonly used in foods like the Products.

15. Under the "What They Do" table heading, the FDA elaborates that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[4]

16. The FDA's classification of citric acid as a preservative is reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc. In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphases added).[5]

---

[2] *Preservatives*, BRITTANICA, https://www.britannica.com/topic/food-additive/Preservatives#ref502211 (accessed February 14, 2023).

[3] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives- colors#types (accessed February 14, 2023).

[4] *Id.*

[5] *See* October 6, 2010 FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express,

17. **Antioxidant Properties.** Citric acid acts as an antioxidant via two processes—inhibiting enzymes and chelating metals. Certain enzymes naturally exist in food products that oxidize and breakdown the food products' molecules. Citric acid deactivates these enzymes, thereby functioning as a preservative.[6] Citric acid also chelates metal ions, which stabilizes and preserves food products by bonding certain molecules in food products to centrally located metal atoms.[7]

18. **Antimicrobial Properties.** Citric acid also has antimicrobial properties and directly inhibits the growth of some bacteria and mold.[8] This is yet another reason why food scientists classify citric acid as a preservative.[9]

19. **Subjective Intent of Use is Immaterial.** Citric acid functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding it to the Products, such as to impart flavor.[10]

20. Even if the Products' citric acids do not, in fact, function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to

---

Inc.

[6] *Id.*

[7] P. Davidson et al., *Chapter 20: Antimicrobial Agents*, in FOOD ADDITIVES, at 592 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).

[8] L. Su et al., *Study on the Antimicrobial Properties of Citrate-Based Biodegradable Polymers*, FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY, 2, 23. https://doi.org/10.3389/fbioe.2014.00023 (accessed June 29, 2023).

[9] *Citric Acid Compound Summary*, NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (accessed February 14, 2023).

[10] *Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing,* in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd-Elhady, *Effect of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry*, 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives").

do so. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.");[11] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or *capable* of preserving") (emphasis added).[12]

21. **The Products' Citric Acid is Chemically Processed and Poses Risks.** Citric acid is naturally occurring when derived from certain citrus fruits. That is not true of the citric acid contained in the products. The citric acid contained in the Products is commercially produced, manufactured, and the result of extensive chemical processing.[13] In fact, more than 90 percent of commercially produced citric acid, including the citric acid contained in the Products, is manufactured through a processed derivative of black mold, *Aspergillus niger*, which can cause allergic reactions and diseases in humans.[14] Negative side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath.[15]

---

[11] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed November 30, 2022).

[12] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed November 30, 2022).

[13] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).

[14] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports*, 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product*, 11 CHEMISTRY CENT. J. 22 (2017), https://doi.org/10.1186/s13065-017-0251-y (accessed February 14, 2023); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid*, 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (accessed February 14, 2023).

[15] *Id.*

9

22. **Defendant Exploits Consumer Demand for Preservative-Free Food.** By representing the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for products with no preservatives. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health … 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[16]

23. According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, on balance, they chose products with "No Preservatives" labels.[17]

24. The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[18] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

25. Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

---

[16] *See, Free-From Food Trends-US-May 2015*, MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last accessed November 30, 2022).

[17] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896. (2020).

[18] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed November 30, 2022).

## CLASS ACTION ALLEGATIONS

26. Plaintiff seeks to represent a class defined as all persons in the United States who during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household consumption, and not for resale (the "Nationwide Class").

27. Plaintiff seeks to represent a subclass defined as all Class members who reside in New York who purchased the Products (the "New York Subclass") (collectively with the Nationwide Class, the "Classes")

28. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

29. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to, the true nature and presence of preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; and whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

30. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

11

31.     Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

32.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

33.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

34.     Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

35.     Plaintiff and New York Subclass members are "persons" within the meaning of the

GBL § 349(h).

36. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

37. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

38. Defendant made false and misleading statements by marketing the Product as containing "No Preservatives" when in fact it contained citric acid, a preservative.

39. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

40. Defendant deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

41. Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

42. Defendant's actions set forth above occurred in the conduct of trade or commerce.

43. The foregoing deceptive acts and practices were directed at consumers.

44. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Products.

45. Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the

Products had they known the truth, and (b) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.

46. On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover her actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II
### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

47. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

48. Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

49. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

50. Defendant's labeling and advertisement of the Product was false and misleading in a material way. Specifically, Defendant advertised the Product as containing "No Preservatives" when in fact it contains citric acid, a preservative.

51. Plaintiff understood Defendant's misrepresentations to mean that the Product in fact contained "No Preservatives" as reasonable consumers understand the term.

52. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

53. This misrepresentation has resulted in consumer injury or harm to the public interest.

54. As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.

55. By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

## COUNT III
### Breach of Express Warranty
### (On behalf of the Nationwide Class and the New York Subclass)

56. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

57. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

58. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain no "No Preservatives."

59. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

60. In fact, the Products do not conform to Defendant's representations and warranties because the Products contain citric acid, a well-documented preservative. By falsely representing the Products in this way, Defendant breached express warranties.

61. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff

and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for it, had they known it contained a preservative.

62. Prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanding that Defendant make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**

### COUNT IV
**Unjust Enrichment**
**(In the Alternative)**

63. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of Class members against Defendant.

65. Plaintiff and Class members conferred benefits on Defendant by paying money to Defendant for the purchase of the Products.

66. Defendant has knowledge of such benefits.

67. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchase of the Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Products contain "No Preservatives" when in fact it contains citric acid, a well-documented preservative.

68. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Nationwide Class and the New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and New York Subclass;

(b) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c) For an order finding in favor of Plaintiff, the Nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h) For an order awarding Plaintiff and the New York Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated:  August 25, 2023               Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    /s/ Julian C. Diamond
       Julian C. Diamond

Frederick J. Klorczyk III
Julian C. Diamond
1330 Avenue of the Americas, 32nd Fl.
New York, New York 10019

Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  fklorczyk@bursor.com
         jdiamond@bursor.com

*Attorneys for Plaintiff*