**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TRACHELE LONG, individually and on behalf of
all others similarly situated,

Plaintiff,

v.

BARILLA AMERICA INC.,

Defendant.

Case No. 7:23-cv-07556-KMK
**CLASS ACTION COMPLAINT**
**JURY TRIAL DEMANDED**

## DEFENDANT'S ANSWER TO COMPLAINT

Defendant, BARILLA AMERICA, INC., ("Barilla") answers Complaint as follows:

## NATURE OF THE ACTION

1.      Defendant formulates, manufactures, advertises, and/or sells multiple types of
tomato sauces (the "Products")[1] throughout the United States, including in New York. Defendant
markets its Products in a systematically misleading manner by misrepresenting that the Products
do not contain preservatives.

**ANSWER:**    Barilla admits the first sentence of Paragraph 1. Barilla denies the second

sentence of Paragraph 1.

2.      Defendant clearly lists "No Preservatives" on Products' label, capitalizing on the
preference of health-conscious consumers to purchase foods that are free from preservatives.
However, Defendant's Products contain "citric acid"—a well-known preservative used in food
products.

**ANSWER:**    Barilla admits that the product label on certain of its pasta sauces has stated

"No Preservatives" at certain times and admits that tomatoes which are an ingredient in

---

[1] The Products encompass all of Defendant's canned and packaged products that are advertised as containing "No
Preservatives" but contain citric acid. The Products include but are not limited to Barilla Marinara Premium Sauce,
Barilla Parmesan & Pecorino Premium Sauce, Barilla Roasted Garlic Premium Sauce, Barilla Savory Herb Premium
Sauce, Barilla Tomato & Basil Premium Sauce, Barilla Fire Roasted Marinara Premium Sauce, Barilla Traditional
Sauce, and Barilla Chunky Traditional Sauce.

certain pasta sauces contain citric acid. Barilla denies the remaining allegations of Paragraph 2.

3.      As a result of its deceptive conduct, Defendant violates state consumer protection statutes and has been unjustly enriched at the expense of consumers.

**ANSWER:**      Barilla denies Paragraph 3.

4.      Plaintiff purchased Defendant's Products and, on behalf of herself and similarly situated purchasers, asserts claims for violations of New York General Business Law §§ 349 and 350, for unjust enrichment, and for breach of express warranty.

**ANSWER:**      Barilla admits that Plaintiff purports to bring the above referenced claims but denies that the allegations have merit. Barilla lacks information sufficient to admit or deny the remaining allegations of Paragraph 4, and on that basis denies those allegations.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

**ANSWER:**      The allegations of Paragraph 5 state a legal conclusion to which no answer is necessary or required.

6.      This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

**ANSWER:**      The allegations of Paragraph 6 state a legal conclusion to which no answer is necessary or required.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

**ANSWER:**   The allegations of Paragraph 7. state a legal conclusion to which no answer

is necessary or required.

## PARTIES

8.      Plaintiff Trachele Long is a citizen of New York who resides in Mount Vernon, New York. Ms. Long has purchased the Products for her personal use at various times during the applicable statute of limitations. Most recently, in or around June 2023, Ms. Long purchased Barilla Roasted Garlic Premium Sauce from a Food Bazaar in Mount Vernon, New York for approximately $3. In purchasing the Product, Ms. Long relied on Defendant's false, misleading, and deceptive marketing of the Product as containing "No Preservatives." Ms. Long understood that "No Preservatives" meant that the Product did not contain any preservatives, but in fact the Product she purchased did contain citric acid, a preservative. Had Ms. Long known that the " No Preservatives" representation was false and misleading, she would not have purchased the Product or would have only been willing to purchase the Product at a lesser price.

**ANSWER:**   Barilla lacks information sufficient to admit or deny the allegations of

Sentences 1-3 of Paragraph 8, an on that basis denies those allegations. Barilla also denies

the remaining allegations of Paragraph 8.

9.      Defendant Barilla America Inc. is [sic] corporation organized under the laws of Illinois with its principal place of business located at 191 North Wacker Drive, Chicago, IL 60606.

**ANSWER:**   Barilla admit that it is a corporation organized under the laws of the state of

Illinois. Barilla denies the remaining allegations of Paragraph 9.

## GENERAL ALLEGATIONS

**Defendant Misrepresents the Products**

10.      Defendant advertises and displays on the side of each of the Products that it contains "No Preservatives," thereby misleading reasonable consumers into believing that the Products are free from preservatives.  However, the products contain citric acid, a well-known and well-documented preservative.  Defendant's relevant labeling of the Products, along with their ingredient list, are depicted below:

3



**Ingredients:**
Tomato puree (water, tomato paste), diced tomatoes in tomato juice, onions, garlic, sea salt, basil, extra virgin olive oil, oregano, citric acid (acidity regulator).



**Ingredients:**
Diced tomatoes in tomato juice,
tomato puree (water, tomato
paste), onions, garlic, sea salt,
basil, extra virgin olive oil,
oregano, citric acid (acidity
regulator), natural flavor.



**Ingredients:**
Tomato puree (water, tomato
paste), diced tomatoes in tomato
juice, roasted garlic, garlic, sea
salt, dried onion, extra virgin
olive oil, parsley, oregano, citric
acid (acidity regulator).



Ingredients:
Diced tomatoes in tomato juice,
tomato puree (water, tomato
paste), onions, basil, sea salt,
garlic, extra virgin olive oil,
citric acid (acidity regulator),
natural flavor.



**ANSWER:**     Barilla admits the above are partial depictions of the jars of certain products

produced by Barilla and that its tomato-based pasta sauces contain citric acid. Barilla

denies the remaining allegations of Paragraph 10.

11.     Additionally, Defendant falsely implies that the citric acid solely functions as an
"acidity regulator" despite functioning as a preservative.

**ANSWER:**     Barilla denies Paragraph 11.

12.     **Citric Acid is a Preservative.** The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5).

**ANSWER:**   Barilla refers to the cited section of the CFR for its full and complete contents and denies any allegation contrary thereto. Further, this paragraph states a legal conclusion to which no answer is required.

13.     Food preservatives are classified into two main groups: antioxidants and antimicrobials. Food scientists agree that the chemical properties of citric acid make it a preservative. Specifically, citric acid is classified as an antioxidant that delays or prevents the deterioration of foods by so-called oxidative mechanisms.[2]

**ANSWER:**   Barilla refers to the cited article for its full and complete contents and denies any allegation contrary thereto. Barilla denies any remaining allegation of Paragraph 13.

14.     In its "Overview of Food Ingredients, Additives & Colors," the FDA lists "citric acid" as a preservative.[3] The FDA also recognizes that preservatives, like citric acid, are commonly used in foods like the Products.

**ANSWER:**   Barilla refers to the cited FDA webpage for its full and complete contents and denies any allegation contrary thereto.

15.     Under the "What They Do" table heading, the FDA elaborates that preservatives help "prevent food spoilage from bacteria, molds, fungi or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); [and] maintain freshness."[4]

**ANSWER:**   Barilla refers to the cited FDA webpage for its full and complete contents and denies any allegation contrary thereto.

---

[2] *Preservatives,* BRITTANICA, https://www.britannica.com/topic/food-additive/Preservatives#ref502211 (accessed February 4, 2023).
[3] *See Overview of Food Ingredients, Additives, and Colors*, U.S. FOOD & DRUG ADMIN. (2018), https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors#types (accessed February 14, 2023).
[4]*Id.*

16.     The FDA's classification of citric acid as a preservative is reflected in a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc. In the letter, the FDA deemed the "Pineapple Bites" and "Pineapple Bites with Coconut" products manufactured by the companies "misbranded within the meaning of Section 403(k) of the [Federal Food and Drug Cosmetic] Act [21 U.S.C. 343(k)] in that they contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphases added).[5]

> **ANSWER:**     Barilla refers to the cited FDA letter for its full and complete contents and
>
> denies any allegation contrary thereto.

17.     **Antioxidant Properties.** Citric acid acts as an antioxidant via two processes—inhibiting enzymes and chelating metals. Certain enzymes naturally exist in food products that oxidize and breakdown the food products' molecules. Citric acid deactivates these enzymes, thereby functioning as a preservative.[6] Citric acid also chelates metal ions, which stabilizes and preserves food products by bonding certain molecules in food products to centrally located metal atoms.[7]

> **ANSWER:**     Barilla refers to the cited FDA letter and the cited publication for their full
>
> and complete contents and denies any allegation contrary thereto. Barilla denies any
>
> remaining allegation of Paragraph 17.

18.     **Antimicrobial Properties.** Citric acid also has antimicrobial properties and directly inhibits the growth of some bacteria and mold.[8] This is yet another reason why food scientists classify citric acid as a preservative.[9]

> **ANSWER:**     Barilla refers to the cited publications for their full and complete contents
>
> and denies any allegation contrary thereto. Barilla denies any remaining allegation of
>
> Paragraph 18.

19.     **Subjective Intent of Use is Immaterial.** Citric acid functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding it to

---

[5] *See* October 6, 2010 FDA Warning Letter to Chiquita Brands Int'l, Inc. and Fresh Express, Inc.
[6] *Id.*
[7] P. Davidson, et al., *Chapter 20: Antimicrobial Agents,* in FOOD ADDITIVES, at 592 (A. Larry Branen et al. eds., Marcel Dekker, Inc. 2d ed. 2002).
[8] L. Su et al., *Study on the Antimicrobial Properties of Citrate-Based Biodegradable Polymers,* FRONTIERS IN BIOENGINEERING AND BIOTECHNOLOGY, 2, 23. https://doi.org/10.3389/fbioe.2014.00023 (accessed June 29, 2023).
[9] *Citric Acid Compound Summary,* NAT'L CTR. FOR BIOTECHNOLOGY INFO., https://pubchem.ncbi.nlm.nih.gov/compound/Citric-acid (accessed February 14, 2023).

the Products, such as to impart flavor.[10]

  **ANSWER:** Barilla denies the allegations in Paragraph 19.

  20. Even if the Products' citric acids do not, in fact, function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so. *See* 21 C.F.R. §101.22(a)(5) (defining preservatives as "any chemical that, when added to food, *tends* to prevent or retard deterioration") (emphasis added); *see also* Merriam-Webster's Dictionary (defining "preservative" as "something that preserves or has the power of preserving.");[11] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or *capable* of preserving") (emphasis added).[12]

  **ANSWER:** Barilla refers to the cited publication for its full and complete contents and

denies any allegation contrary thereto. Barilla denies any remaining allegation of Paragraph

20.

  21. **The Products' Citric Acid is Chemically Processed and Poses Risks.** Citric acid is naturally occurring when derived from certain citrus fruits. That is not true of the citric acid contained in the products. The citric acid contained in the Products is commercially produced, manufactured, and the result of extensive chemical processing.[13] In fact, more than 90 percent of commercially produced citric acid, including the citric acid contained in the Products, is manufactured through a processed derivative of black *mold, Aspergillus niger,* which can cause allergic reactions and diseases in humans.[14] Negative side effects of consuming manufactured citric acid include: swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath.[15]

---

[10]*Citric Acid* in KIRK-OTHMER FOOD & FEED TECH., at 262 (John Wiley & Sons, 2007); L. Somogyi, *Chapter 13: Direct Food Additives in Fruit Processing*, in PROCESSING FRUITS: SCI. & TECH., at 302 (D. Barrett et al. eds., CRC Press 2d ed. 2004); M. Abd-Elhady, *Effects of citric acid, calcium lactate and low temperature prefreezing treatment on the quality of frozen strawberry,* 59 ANNALS OF AGRIC. SCIS., 69-75 (2014); J. deMan, *Chapter 11: Additives and Contaminants,* in PRINCIPLES OF FOOD CHEMISTRY, at 438 (AVI Publishing Co., Inc. 3d ed. 1999) ("Acids as food additives serve a dual purpose, as acidulants and as preservatives").

[11] *Preservative,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed November 30, 2022).

[12] *Preservative,* American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed November 30, 2022).

[13] A. Hesham, Y. Mostafa & L. Al-Sharqui, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates,* 48 MYCOBIOLOGY 122, 123 (2020).

[14] *Id.*; I. Sweis & B. Cressey, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series for four case reports,* 5 TOXICOLOGY REPS., 808-12 (2018); R. Ciriminna et al., *Citric Acid: Emerging Applications of Key Biotechnology Industrial Product,* 11 CHEMISTRY CENT. J. 22 (2017); https://doi.org/10.1186/s13065-017-0251-y (accessed February 14, 2023); K. Kirimura, Y. Honda, & T. Hattori, *Citric Acid,* 3 COMPREHENSIVE BIOTECHNOLOGY 135 (2011), https://www.sciencedirect.com/science/article/pii/B9780080885049001690 (accessed February 14, 2023).

[15] *Id.*

**ANSWER:**     Barilla refers to the cited publication for its full and complete contents and denies any allegation contrary thereto. Barilla denies any remaining allegation of Paragraph 21.

22.     **Defendant Exploits Consumer Demand for Preservative-Free Food.** By representing the Products have "No Preservatives," Defendant seeks to capitalize on consumers' preference for products with no preservatives. Indeed, "foods bearing `free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health ... 84 percent of American consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent). Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent)."[16]

**ANSWER:**     Barilla refers to the cited publication for its full and complete contents and denies any allegation contrary thereto. Barilla denies any remaining allegation of Paragraph 22.

23.     According to another study, when consumers were asked to choose a product that was the closest to their understanding of what "natural" means on product labels, on balance, they chose products with "No Preservatives" labels.[17]

**ANSWER:**     Barilla refers to the cited publication for its full and complete contents and denies any allegation contrary thereto. Barilla denies any remaining allegation of Paragraph 23.

24.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[18] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy non-preservative food items like the Products.

---

[16] *See, Free-From Food Trends-US-May 2015,* MINTEL https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (accessed November 30, 2022).

[17] Sajida Rahman, et al., Assessing consumers' understanding of the term "Natural" on food labeling, Journal of Food Science, Vol. 85, No. 6, 1891-1896.  (2020).

[18] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025,* https://www.hospitalitynet.org/news/4108643.html (last accessed November 30, 2022).

**ANSWER:**   Barilla refers to the cited publication for its full and complete contents and

denies any allegation contrary thereto. Barilla denies any remaining allegation of Paragraph

24.

25.   Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

**ANSWER:**   Barilla denies Paragraph 25.

## CLASS ACTION ALLEGATIONS

26.   Plaintiff seeks to represent a class defined as all persons in the United States who during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household consumption, and not for resale (the "Nationwide Class").

**ANSWER:**   Barilla admits that Plaintiff seeks to represent a class as stated but denies

that such a class should be certified.

27.   Plaintiff seeks to represent a subclass defined as all Class members who reside in New York who purchased the Products (the "New York Subclass") (collectively with the Nationwide Class, the "Classes")

**ANSWER:**   Barilla admits that Plaintiff seeks to represent a subclass as stated but denies

that such a subclass should be certified.

28.   Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the hundreds of thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time **but** may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

**ANSWER:**   Paragraph 28 states a legal conclusion to which no answer is required. To

the extent any answer is required, Barilla  denies  the allegations of Paragraph 28.

29.   Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions

include, but are not limited to, the true nature and presence of preservatives in the Products; whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive; whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof; and whether Plaintiff and the members of the Classes are entitled to attorneys' fees and costs.

**ANSWER:**   Paragraph 29 states a legal conclusion to which no answer is required. To the extent any answer is required, Barilla denies the allegations of Paragraph 29.

30.   The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

**ANSWER:**   Paragraph 30 states a legal conclusion to which no answer is required. To the extent any answer is required, Barilla denies the allegations of Paragraph 30.

31.   Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

**ANSWER:**   Paragraph 31 states a legal conclusion to which no answer is required. To the extent any answer is required, Barilla denies the allegations of Paragraph 31.

32.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**ANSWER:**   Paragraph 32 states a legal conclusion to which no answer is required. To the extent any answer is required, Barilla denies the allegations of Paragraph 32.

## CAUSES OF ACTION

### COUNT I
### Violation of the New York General Business Law § 349
### (On behalf of the New York Subclass)

33.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

**ANSWER:**     Barilla incorporates by reference its answers to paragraphs 1-32.

34.     Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendant.

**ANSWER:**     Barilla admits that Plaintiff has attempted to bring the above stated cause of

action but denies the claim has merit.

35.     Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

**ANSWER:**     Paragraph 35 states a legal conclusion to which no answer is required.

Barilla denies any remaining allegations of Paragraph 35.

36.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

**ANSWER:**     Paragraph 36 states a legal conclusion to which no answer is required.

Barilla denies any remaining allegations of Paragraph 36.

37.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

**ANSWER:**     Paragraph 37 states a legal conclusion to which no answer is required.

Barilla denies any remaining allegations of Paragraph 37.

38.     Defendant made false and misleading statements by marketing the Product as containing "No Preservatives" when in fact it contained citric acid, a preservative.

**ANSWER:**     Barilla denies Paragraph 38.

13

39.     In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

**ANSWER:**     Barilla denies Paragraph 39.


40.     Defendant deceptive acts or practices were materially misleading. Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of its Products, as discussed throughout.

**ANSWER:**     Barilla denies Paragraph 40.


41.     Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

**ANSWER:**     Barilla denies Paragraph 41.


42.     Defendant's actions set forth above occurred in the conduct of trade or commerce.

**ANSWER:**     Barilla denies Paragraph 42.


43.     The foregoing deceptive acts and practices were directed at consumers.

**ANSWER:**     Barilla denies Paragraph 43.


44.     Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Products.

**ANSWER:**     Barilla denies Paragraph 44.


45.     Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Products had they known the truth, and (b) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.

**ANSWER:**     Barilla denies Paragraph 45.


46.     On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices described herein, to recover her actual damages

14

or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

   **ANSWER:**   Barilla denies that Plaintiff is entitled to the requested relief. Further,

Plaintiff has conceded and withdrawn her request for injunctive relief (Dkt. No. 16).


## COUNT II

### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

   47.   Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

   **ANSWER:**   Barilla incorporates by reference and realleges herein all answers alleged

above.


   48.   Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

   **ANSWER:**   Barilla admits that Plaintiff has attempted to bring the above stated  claim

but denies the claim has merit.


   49.   GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

   **ANSWER:**   Paragraph 49 states a legal conclusion to which no answer is required.

Barilla denies any remaining allegations of Paragraph 49.


   50.   Defendant's labeling and advertisement of the Product was false and misleading in a material way. Specifically, Defendant advertised the Product as containing "No Preservatives" when in fact it contains citric acid, a preservative.

   **ANSWER:**   Barilla denies Paragraph 50.


   51.   Plaintiff understood Defendant's misrepresentations to mean that the Product in fact contained "No Preservatives" as reasonable consumers understand the term.

   **ANSWER:**   Barilla denies Paragraph 51.

52.     This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

    **ANSWER:**     Barilla denies Paragraph 52.

53.     This misrepresentation has resulted in consumer injury or harm to the public interest.

    **ANSWER:**     Barilla denies Paragraph 53.

54.     As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because (a) they would not have purchased the Product had they known the truth, and (b) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.

    **ANSWER:**     Barilla denies Paragraph 54.

55.     By reason of the foregoing and as a result of Defendant's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

    **ANSWER:**     Barilla denies that Plaintiff is entitled to the requested relief. Further,

Plaintiff has conceded and withdrawn her request for injunctive relief (Dkt. No. 16).


### COUNT III
**Breach of Express Warranty**
**(On behalf of the Nationwide Class and the New York Subclass)**

56.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

    **ANSWER:**     Barilla incorporates by reference and realleges herein all answers alleged

above.

57.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

**ANSWER:**   Barilla admits that Plaintiff has attempted to bring the above stated  claim but denies the claim has merit.

58.    Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contain no "No Preservatives."

**ANSWER:**   Barilla denies Paragraph 58.

59.    Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff and members of the Classes.

**ANSWER:**   Barilla denies Paragraph 59.

60.    In fact, the Products do not conform to Defendant's representations and warranties because the Products contain citric acid, a well-documented preservative. By falsely representing the Products in this way, Defendant breached express warranties.

**ANSWER:**   Barilla denies Paragraph 60.

61.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial because they would not have purchased the Products, or would have paid substantially less for it, had they known it contained a preservative.

**ANSWER:**   Barilla denies Paragraph 61.

62.    Prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607. Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanding that Defendant make full restitution by refunding the monies received therefrom. A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**

**ANSWER:**   Barilla refers to the cited Exhibit 1 for its full and complete contents and denies any allegation contrary thereto. Barilla denies any remaining allegation of Paragraph 62.

**COUNT IV**

17

**Unjust Enrichment**
**(In the Alternative)**

Count IV has been conceded and withdrawn (Dkt. No. 16) and thus no answer is required.

## ADDITIONAL DEFENSES

### First Additional Defense: Standing

Plaintiff's claims are barred for lack of standing to the extent they did not purchase some or all of the products at issue. Plaintiff's claims are also barred for lack of standing to the extent that they suffered no injury in fact and did not lose money or property as a result of their purchases of the Sauce Products.

### Second Additional Defense: Preemption

Plaintiff's claims are preempted in whole or in part under the Nutrition Labeling and Education Act, 21 U.S.C. § 341 *et seq.* Because the Complaint seeks to impose labeling requirements different than those required under the NLEA, Plaintiff's claims are preempted.

### Third Additional Defense: Compliance with Applicable Laws and Regulations

Plaintiff's claims are barred in whole or in part because the labeling of the challenged products complied with all applicable laws and FDA regulations.

### Fourth Additional Defense: Statute of Limitations

Plaintiff's claims are barred to the extent that they are outside the applicable statutes of limitations for each of her claims.

Dated: New York, New York
      October 31, 2023

                SHER TREMONTE LLP

                By: /s/ Justin J. Gunnell
                    Justin J. Gunnell
                80 Broad Street, 13th Floor
                New York, New York  10004
                Tel: 212.202.2600
                Email: jgunnell@shertremonte.com

                Steven Blonder
                (admitted *pro hac vice*)
                MUCH SHELIST, P.C.
                191 North Wacker Drive, Suite 1800
                Chicago, IL 60606
                Tel: 312.521.2402
                Email: sblonder@muchshelist.com

                *Attorneys for Barilla America Inc.*

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was served on all counsel of record for all parties on October 31, 2023 via the Court's CM/ECF system.

*/s/ Justin J. Gunnell*

14043508_1